**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>MANNON L. WALTERS, INC.,<br><br>　　　　　　Alleged Debtor. | Chapter 7<br><br>Case No. 18-05351 (ABG)<br><br>**Presentment: April 11, 2018 at 10:00 a.m.** |

**PETITIONING/JOINING CREDITORS' OBJECTION TO ALLEGED DEBTOR'S
MOTION TO DISMISS INVOLUNTARY BANKRUPTCY PETITION
<u>AS BAD FAITH FILING</u>**

Petitioning Creditors Roger A. Zajicek, Stephen N. David (as Trustee of the Jennifer L. David Rev Trust DTD 12/9/1999), and Mark W. Oppegard (as Trustee of the Mark W. Oppegard Trust Dated February 11, 2003), and Joining Creditor John Bohinski (collectively, the "<u>Creditors</u>"), by and through their attorney, hereby object to the *Motion to Dismiss Involuntary Bankruptcy Petition as Bad Faith Filing* [Doc. 17] (the "<u>Second Motion to Dismiss</u>") filed by Mannon L. Walters, Inc. (the "<u>Alleged Debtor</u>"), and in support thereof the Creditors respectfully state as follows:

**I.    INTRODUCTION**

1.    Fourteen words conclusively prove that the Creditors filed their involuntary petition against the Alleged Debtor in good faith: "**<u>Borrower shall be responsible for the repayment of all interest due on this Debenture</u>**."

2.    This clear and unambiguous provision from section 4.1 of the Creditors' debentures (the "<u>Debentures</u>") confirms that the Alleged Debtor has no objective basis to dispute the Creditors' claims for interest.  And with no bona fide dispute as to the Creditors' claims, the Alleged Debtor has no other good faith basis to contest the entry of an order for relief.

3. Because the Second Motion to Dismiss is almost entirely premised on the Alleged Debtor's baseless denial of liability for interest under the Debenture, <u>Section A</u> of this Objection explains in detail why the Creditors' claims are not subject to any bona fide dispute. After establishing the Creditors' undisputed claims, <u>Section B</u> of this Objection then examines how the totality of the circumstances overwhelmingly demonstrate the Creditors' good faith.

## II. BASIS FOR OBJECTION

**A.   <u>The Creditors' Claims Are Not Subject To Any Bona Fide Dispute.</u>**

4. Section 303(b) requires that a petitioning creditor's claim must not be the subject of "a bona fide dispute as to the liability or amount" of such claim. 11 U.S.C. § 303(b).

5. If the petitioning creditor establishes a prima facie case that its claim is not subject to a bona fide dispute, then the burden shits to the alleged debtor to present evidence of a bona fide dispute. *See In re 35th & Morgan Dev. Corp.*, 510 B.R. 832, 846 (Bankr. N.D. Ill. 2014)  To satisfy its burden, the alleged debtor must demonstrate that there is an "objective basis" for the existence of a bona fide dispute, which requires the debtor to raise "some substantial factual or legal issue." *Id.* "Mere existence of pending litigation or the filing of an answer is insufficient to establish the existence of a bona fide dispute [citation omitted]…[n]or does the mere pleading of an affirmative defense establish a bona fide dispute." *Id.*

6. The Creditors assert claims against the Alleged Debtor for accrued and unpaid interest under the Debentures. *See* Involuntary Petition [Doc. 1]. These claims are based upon the clear and unambiguous terms of the Debentures. *See, e.g.*, Debentures at Preamble and §§ 1.1, 1.2 and 4.1:[1]

---

[1] A generic form of the 2007A Debenture is attached as <u>Exhibit A</u> to the Affidavit of Mannon L. Walters [Doc. 13] in support of the Alleged Debtor's *Motion to Dismiss or in the Alternative to*

2

- <u>Section 1.1</u> provides that interest shall accrue "at a rate equal to the lesser of (i) 12% per annum or (ii) the maximum non-usurious rate." *Id.* at p. 2.

- <u>Section 1.2</u> provides that "[i]nterest only payments shall commence on the first day of the month following the Issue Date and shall continue on the first day of each month thereafter. . . until the Maturity Date of fifteen years after the Effective Date…" *Id.*

- <u>Section 4.1</u> clearly and unambiguously provides that:

  Recourse for the repayment of the principal of this Debenture shall be limited to the Collateral; **[Alleged Debtor] shall be responsible for the repayment of all interest due on this Debenture.**

  *Id.* at p. 4 (emphasis added).

- <u>The Preamble</u> plainly and equivocally clarifies:

  To the extent, if any, that there is a conflict between the terms and provisions of this Debenture and the description thereof contained in the [confidential Private Placement Memorandum ("<u>Memorandum</u>")], **the description contained in the Debenture shall prevail.**

  *Id.* at p. 1 (emphasis added).

7. Thus, the clear and unambiguous terms of the Debentures firmly establish the Creditors' prima facie case that the Alleged Debtor has undisputed liability for accrued and unpaid interest under the Debentures.

---

*Transfer Venue to the United States Bankruptcy Court for the Southern District of Indiana* [Doc. 9 & 12] (the "<u>First Motion to Dismiss</u>"). Although the executed Debentures held by the Creditors are controlling, the relevant sections are identical in <u>Exhibit A</u> and each of the executed Debentures.

8. In response, the Alleged Debtor continues to plead that "there is an actual bona fide dispute as to whether the Alleged Debtor owes interest under the Debentures or whether the interest under the Debentures is non-recourse debt secured only by the Collateral." Second Motion to Dismiss at ¶13, p. 4. However, the Alleged Debtor cannot meet its burden to prove this mere denial because it has not raised a single substantial factual or legal issue that would provide any objective basis to dispute liability to the Creditors for accrued and unpaid interest under the Debentures.

9. Indeed, the Alleged Debtor does not cite to a single provision in the Debenture that would support any bona fide basis to dispute liability for interest. To the contrary, in the First Motion to Dismiss the Alleged Debtor offered the Court a misleading quote of the key sentence from Section 4.1 by omitting the operative final clause (regarding the Alleged Debtor's responsibility for repayment of all interest due under the Debenture). *See* First Motion to Dismiss at ¶33, p. 6. And in the Second Motion to Dismiss, the Alleged Debtor still refuses to address (or even accurately quote) the clear and unambiguous language of Section 4.1, acknowledging only that "there may be language in the Debentures which [the Creditors] assert gives rise to recourse liability to Alleged Debtor for interest under the Debentures." Second Motion to Dismiss at ¶8, p. 3.

10. The Alleged Debtor apparently "disputes" liability for interest under the Debentures based solely upon a single sentence describing the Debentures in what the Alleged Debtor claims are forms of Memorandum provided to the Creditors. *See* Second Motion to Dismiss at ¶6, p. 3 (purporting to quoting from Memorandums without providing citation to specific source). Regardless of what this sentence might mean, whether it contains a typographical error, or whether the purported forms of the Memorandum that the Alleged Debtor

filed in support of the Second Motion to Dismiss were ever actually provided to the Creditors, the Debenture itself is clear and unambiguous that **the Alleged Debtor "shall be responsible for the repayment of all interest due on this Debenture"** and to extent of any conflict between the terms of the Debenture and any description in the Memorandum **"the Debenture shall prevail."**

11. In addition to being barred by the express terms of the Debentures, the Alleged Debtor's reliance upon a single external statement in the Memorandums to dispute liability for interest under the Debenture is completely inconsistent with applicable law.

12. Texas[2] follows the parol evidence rule, which presumes when parties reduce an agreement to writing:

> in the absence of fraud, accident, or mistake, that any prior or contemporaneous oral or written agreements merged into the written agreement and, therefore, that any provisions not set out in the writing were either abandoned before the execution of the agreement or, alternatively, were never made and are thus excluded from consideration in interpreting the written agreement.

*DeClaire v. G&B McIntosh Family Ltd. P'ship*, 260 S.W.3d 34, 45 (Tex. App.-Houston [1st Dist.] 2008, no pet.).[3]

13. In *DeClaire*, the Texas Court of Appeals applied the parol evidence rule to reverse a trial court whose ruling was based upon prior agreements/communications in connection with a dispute about recourse under a promissory note. *See id.* at 46. The trial court

---

[2] Section 6.12(a) of the Debentures contains a Texas choice of law provision applicable to the arbitration of any "issue, dispute, claim or controversy . . . arising out of or relating to this Debenture." The Creditors do not concede that Texas law is applicable to a determination of whether any bona fide dispute exists regarding the Alleged Debtor's liability for interest under section 303(b) of the Bankruptcy Code and reserve all rights with respect thereto. However, the application of Texas law to this issue is clear, and the Creditors do not believe that the result would be any different under the law of any other relevant jurisdiction.

[3] For the Court's convenience, a copy of the *DeClaire* opinion is attached as an Appendix to this Objection.

found that the parties entered into an oral agreement regarding repayment of debt, but that the parties' written contract included additional language (which the holder of the note denied approving) limiting the note holder's recourse for repayment to certain collateral. *See id.* at 41-42. The Texas Court of Appeals held that:

> because the oral agreement is inconsistent with the written contract, we conclude that the trial court was precluded from enforcing the prior oral agreement [and] because the trial court could not rely on parol evidence, we also conclude that <u>legally insufficient</u> evidence supports the trial court's ninth and tenth conclusions of law [regarding full recourse of the borrower].

*Id.* at 46 (emphasis added).

14. Just as in *DeClaire*, the Alleged Debtor's attempt to manufacture a dispute regarding liability for interest due to the Creditors under the Debentures based solely upon a snippet of language from alleged offering Memorandums fails as a matter of law. The Debentures could not be more clear and unambiguous in providing that **the Alleged Debtor "shall be responsible for the repayment of all interest due on this Debenture."** This binding contractual provision prevails over any allegedly conflicting statement in the Memorandums (or otherwise) under the express terms of the Debentures and by operation of the parol evidence rule.

15. Aside from the groundless recourse argument, the Alleged Debtor has not raised any other objective basis to dispute the merits of the Creditors' claims under section 303(b) of the Bankruptcy Code. No matter how many times the Alleged Debtor repeats it, a blanket denial has no force or effect under section 303(b). The Alleged Debtor cannot meet its burden to prove that the Creditors' claims are subject to bona fide dispute.

**B.    The Totality Of The Circumstances Overwhelmingly Demonstrates That The Creditors Filed The Involuntary Petition In Good Faith.**

16.    Under very different facts, this Court previously applied the "totality of the circumstances" test for bad faith to an alleged debtor's request for damages under section 303(i) and other relief under section 303(k) of the Bankruptcy Code. *See In re Meltzer*, 516 B.R. 504, 516 (Bankr. N.D. Ill. 2014) (citing *In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413, 425 (Bankr.E.D.Pa.2013)).

17.    The Alleged Debtor cites the Third Circuit's subsequent affirming decision in *Forever Green Athletic Fields, Inc.* for the propositions that bad faith also may be grounds for dismissal of an involuntary petition, and that the "totality of the circumstances" test applies in this context as well. *See* Second Motion to Dismiss at ¶¶10-20, pp. 4-5. The Third Circuit set forth several factors to evaluate petitioning creditors' good faith, including whether:

> (i)    The creditors satisfied the statutory criteria for filing the petition;
>
> (ii)   The involuntary petition was meritorious;
>
> (iii)  The creditors made a reasonable inquiry into the relevant facts and pertinent law before filing;
>
> (iv)   There was evidence of preferential payments to certain creditors or a dissipation of the debtor's assets;
>
> (v)    The filing was motivated by ill will or a desire to harass;
>
> (vi)   The petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same;
>
> (vii)  The filing was used as a tactical advantage in pending action;

    (viii)    The filing was used as a substitute for customary debt-collection procedures; and

    (ix)    The filing has suspicious timing.

*See Dawson v. Forever Green Athletic Fields, Inc. (In re Forever Green Athletic Fields, Inc.)*, 804 F.3d 328, 336 (3d Cir. 2015).

18.    The Second Motion to Dismiss relies primarily on factors (i) and (ii), with brief reference to factors (iii), (iv), (viii) and the venue in which the Creditors filed the involuntary petition. However, particularly because the Creditors' claims are not subject to any bona fide dispute, *see* §A *supra*, the totality of the circumstances overwhelmingly demonstrates that the Creditors filed the Involuntary Petition in good faith.

    (i)    <u>Statutory Criteria</u>

19.    As set forth in Section A *supra*, the Creditors hold claims that are not subject to bona fide dispute as to liability or amount. The Creditors' claims are not contingent. There are three filing Creditors (plus a joining Creditor). And the Creditors' claims aggregate at least $15,575 more than the value of any lien on property of the Alleged Debtor securing such claims.[4] Therefore, the Creditors' claims satisfy the requirements of section 303(b).

    (ii)    <u>Merits of Involuntary Petition</u>

20.    Aside from the petitioning creditor qualifications under section 303(b), the other requirement for entry of an order for relief on an involuntary petition is set forth in section 303(h) of the Bankruptcy Code. The Debenture holders' indisputable claims for interest

---

[4] The Alleged Debtor admits that the Collateral under the Debentures is worthless. *See* [Doc. 14] at pp. 1 and 5 (referring to Collateral as "unproductive" and "now-failed"); [Doc. 13] at ¶25, p. 3 (Collateral "has not produced sufficient income to fully satisfy the principal under the respective Debentures"); [Doc. 19] at ¶1 (again describing oil and gas lease Collateral as "now-failed").

8

combined with the Alleged Debtor's own admissions about its financial condition also prove that section 303(h)(1) has been satisfied.

21. According to the Alleged Debtor's balance sheet filed in support of the Second Motion to Dismiss, the Alleged Debtor had less than $400,000 in equity and less than $50,000 in cash on hand as of December 31, 2017 <u>excluding any liability for accrued and unpaid interest under the Debentures</u>.  *See* <u>Exhibit B</u> to Affidavit of Mannon L. Walters [Doc. 18-2].[5]  The three filing Creditors are owed in excess of $56,000 in accrued and unpaid interest under their Debentures alone.  *See* Involuntary Petition [Doc. 1].  If the other 68 Debenture holders had remaining principal investments of just $18,750 each (which is only 75% of the minimum subscription amount of $25,000, to account for any royalty interest conversions), the Alleged Debtor would owe at least an additional $459,000 in interest, for a total of more than $515,000 in accrued and unpaid interest under the Debentures:

> $25,000 x 75% = $18,750 x 68 = $1,275,000 x 12% interest = $153,000 in interest/year x 3 years = $459,000
>
> plus $56,000 (three filing Creditors' unpaid interest) = **at least $515,000 in unpaid interest**
>
> less Alleged Debtor's purported equity of $371,275 = **at least $143,725 shortfall**

Thus, even taking the Alleged Debtor's balance sheet at face value, the amount of the Alleged Debtor's debts exceeds the value of its assets by **more than $140,000**, and the amount of unpaid interest due to the Debenture holders is **more than 10x greater** than the Alleged Debtor's cash on hand.

---

[5] Despite the Creditors having requested financial information from the Alleged Debtor months ago, the Alleged Debtor has refused to provide the Creditors with anything other than a copy of the same balance sheet filed with the Second Motion to Dismiss, which was first provided to counsel for the Creditors on April 2, 2018.  *See* §B(iii) *infra*.

22. Moreover, courts in this district have applied a two-step inquiry under section 303(h)(1), which requires (a) determining which debts fall within the scope of section 303(h)(1), and (b) examining whether the debtor has regularly missed a significant number of payments to creditors or has regularly missed payments which are significant in amount in relation to the size of a debtor's operation. *See In re West Side Comm. Hosp., Inc.*, 112 B.R. 243, 256 (Bankr. N.D. Ill. 1990).

23. Although the Alleged Debtor has refused to provide information that would enable the Creditors or the Court to determine the nature of any other debts, *see* §B(iii) *infra*, there is no bona fide dispute that the Alleged Debtor's liability for accrued and unpaid interest under the Debenture is a debt that falls within the scope of section 303(h)(1). *See* §A *supra*. It necessarily follows that the Alleged Debtor is not generally paying its debts as they come due based on the number, aggregate amount and regularity of the missed interest payments, the number of Debenture holders to whom such payments are owed, and the years that such payments have gone unpaid (in addition to the Alleged Debtor's deficit financial situation). *See West Side Comm. Hosp., Inc.* at 256-57.

24. Therefore, the Involuntary Petition is a clear success on the merits because it indisputably meets the requirements of sections 303(b) and 303(h)(1).

(iii)    Creditors' Reasonable Inquiry Into Facts And Law

25. Prior to filing the Involuntary Petition, counsel for the Creditors made an exhaustive effort to obtain financial information from the Alleged Debtors. *See* Affidavit of Nathan A. Schultz filed in support of this Objection. Starting in December 2017, counsel for the Creditors requested (i) copies of all security documentation referenced in Section 4.1 of the Debenture (or written confirmation that no such documentation exists); (ii) a complete schedule

of the Collateral, including a list of any substitutions purportedly made by Alleged Debtor; (iii) copies of all oil and gas leases that currently comprise or previously comprised the Collateral; (iv) current contact information for the counter-party(ies) to all oil and gas leases that currently comprise or previously comprised the Collateral; (v) copies of any correspondence between the Alleged Debtor and the counter-party(ies) to all oil and gas leases that currently comprise or previously comprised the Collateral; (vi) copies of any correspondence or other documents referring or relating to any claims or interests in the Collateral asserted by any party other than the Alleged Debtor and the Creditors (i.e. including, without limitation, any other holders of Debentures purportedly secured by the Collateral); (vii) an accounting of any and all proceeds derived from all oil and gas leases that currently comprise or previously comprised the Collateral; (viii) a schedule of all oil and gas wells drilled and completed on the properties that comprise the Collateral; (ix) an accounting of all royalties, profits, proceeds, or other sums derived from all oil and gas wells drilled and completed on the properties that comprise the Collateral; (x) any estimates made by the Alleged Debtor in accordance with section 3.2 of the Debentures; and (xi) the Alleged Debtor's most recent financial statements (the "Required Information"). *See id.*

26. The Alleged Debtor provided only a perfunctory initial response to this request, which included a handful of documents but none of the substantive financial information requested. *See id*. When counsel for the Creditors reiterated the demand for Required Information and made a follow-up request for the Alleged Debtor to provide documentation or other evidence to support certain contentions made in its initial response, the Alleged Debtor went radio silent and refused to even provide an estimate for when the Creditors could expect a response. *See id.*

27. The Creditors thereafter authorized their counsel to commence the Involuntary Petition based upon diligent legal research that encompassed many of the cases cited in this Objection and in the Creditors' objection to the First Motion to Dismiss.

28. Therefore, the Creditors made a reasonable inquiry into the facts and law before filing the Involuntary Petition, particularly given the Alleged Debtor's failure to respond.

(iv)    <u>Preferential Payments/Dissipation of Assets</u>

29. Due to the Alleged Debtor's failure to respond, the Creditors were not able to obtain any specific information about preferential payments or dissipation of assets prior to filing the Involuntary Petition. However, based on the Alleged Debtor's representations to this Court that it is currently paying debts to creditors other than the Debenture holders as they become due, the Creditors are very concerned that the Alleged Debtor is making preferential payments and dissipating assets to the detriment of the Debenture holders. *See* Second Motion to Dismiss at ¶15, p. 4.

30. Therefore, this factor supports the Creditors' good faith in filing the Involuntary Petition.

(v)    <u>Ill Will/Desire To Harass</u>

31. The Creditors' only motivation in filing the Involuntary Petition is to reach closure on their investments under the Debentures. The Creditors attempted to do so in a consensual manner, but the Alleged Debtor refused to participate in any kind of constructive dialogue. *See* §B(iii) *supra*. Ultimately, the Creditors concluded that filing the Involuntary Petition was their only economically feasible option. *See* §§B(vii)&(viii) *infra*.

32. Therefore, the Creditors have not acted out of ill will nor with any desire to harass the Alleged Debtor.

(vi) <u>Disproportionate Advantage vs. Protection Against Other Creditors</u>

33. The Creditors strongly believe that entry of an order for relief is in the best interests of <u>all</u> Debenture holders (and likely any other non-insider creditors). Indeed, the Creditors arguably could have obtained a better result compared to other Debenture holders by proceeding with arbitration (as the Alleged Debtor keeps insisting) and negotiating a settlement or collecting on an arbitration award. Furthermore, the filing of the Involuntary Petition will prevent other creditors (especially any insiders) from obtaining preferential treatment to the prejudice of the Creditors and other Debenture holders. *See* §B(iv) *supra*.

34. Therefore, the Creditors filed the Involuntary Petition in good faith because entry of an order for relief is the only way to ensure that all Debenture holders (and other creditors) are treated fair and equitably.

(vii) <u>Tactical Advantage</u>

35. The Creditors did not file the Involuntary Petition to obtain a tactical advantage in pending litigation. There is no pending litigation because there is no bona fide dispute. Instead, the Alleged Debtor has unjustifiably refused to acknowledge its undisputed liability for accrued and unpaid interest under the Debentures. And when confronted by the Creditors, the Alleged Debtor has refused to engage in any kind of constructive resolution.

36. The only tactical advantage being deployed here is the Alleged Debtor's attempt to divest this Court of jurisdiction based upon the Debenture's inapplicable and onerous arbitration clause, which requires: (a) arbitration in Dallas, Texas, (b) a three-arbitrator panel, (c) each arbitrator to have at least 10 years of experience in the industry or profession related to the subject matter of the claim, (d) approval of the arbitrators before a party can conduct any discovery, and (e) the losing party to pay all expenses of the arbitration including for the

arbitrators, attorney's fees, experts and presentation of proof. *See* Debenture at § 6.12.  This arbitration clause was clearly drafted to have a preclusive and chilling effect on the Debenture holders' ability to obtain any relief.

37. Therefore, the Creditors have not sought to obtain any tactical advantage by declining to pursue a wasteful and pointless arbitration when there is no bona fide dispute.

(viii) <u>Substitute For Customary Debt Collection</u>

38. The Creditors did not file the Involuntary Petition as a substitute for customary debt collection procedures because this is not a customary debt collection situation.

39. First, the Alleged Debtor has denied liability for interest under the Debentures where there is no bona fide basis for dispute. *See* §A *supra*. Second, the Alleged Debtor has refused to engage in any constructive dialogue or provide any information about its ability to pay accrued and unpaid interest under the Debentures. *See* §B(iii) *supra*. Third, the Alleged Debtor has taken the position that approval by a majority of Debenture holders is required in order to pursue any remedies under the Debentures, even though there is no such requirement in the Debentures (and the Alleged Debtor refuses to provide the addresses or any other means for the Creditors to contact the other Debenture holders). *See id.* Fourth, the Collateral for the Debentures is a fractional interest in oil and gas leases shared by all of the Debenture holders, but once again the Alleged Debtor refuses to provide the addresses or any other means for the Creditors to contact the other Debenture holders regarding the Collateral. *See id.* Fifth, the Alleged Debtor hides behind an onerous and unreasonable arbitration clause, going so far as to argue that it divests this Court of jurisdiction over the Involuntary Petition. *See* §B(vii) *supra*.

40. Especially considering these unique circumstances, the Involuntary Petition was a pragmatic and reasonable approach undertaken by the Creditors in good faith.

    (ix)    <u>Timing</u>

41. The Creditors waited patiently for years to give the Alleged Debtor time to catch up on the Debenture interest payments. Ultimately, the Creditors became concerned that their rights under the Debentures would be prejudiced if they did not act. The Creditors attempted to engage the Alleged Debtors in a constructive dialogue to resolve the interest payment defaults, but the Alleged Debtors refused to participate. *See* §B(iii) *supra*.

42. Therefore, the Creditors concluded in good faith that their best option was to proceed with the Involuntary Petition.

    (x)    <u>Venue</u>

43. The Creditors properly filed the Involuntary Petition in this district based on the Alleged Debtor's domicile as an Illinois corporation. *See* Creditors' Objection to First Motion to Dismiss [Doc. 15]. They did so in good faith reliance on the applicable statutes and case law from this district. *See id.*

44. Therefore, venue is no basis to find that the Creditors acted in bad faith.

WHEREFORE, the Creditors respectfully request that the Court (i) sustain this Objection, (ii) find that the Creditors filed the Involuntary Petition in good faith based, *inter alia*, on the lack of a bona fide dispute as to the Creditors' claims, (iii) deny the Second Motion to Dismiss, and (iv) grant such other and further relief as the Court deems to be just and proper, including the entry of an order for relief.

Dated: April 9, 2018                      /s/ *Nathan A. Schultz*
Traverse City, Michigan             Nathan A. Schultz, Esq.
                                                           FOX ROTHSCHILD LLP
                                                           345 California Street, Suite 2200
                                                           San Francisco, CA 94104-2670
                                                           Telephone: (310) 429-7128
                                                           Facsimile: (415) 391-4436
                                                           Email: nschultz@foxrothschild.com

## CERTIFICATE OF SERVICE

      The undersigned, an attorney, does hereby certify that on April 9, 2018, he caused the attached PETITIONING/JOINING CREDITORS' OBJECTION TO ALLEGED DEBTOR'S MOTION TO DISMISS INVOLUNTARY BANKRUPTCY PETITION AS BAD FAITH FILING to be filed with the Court's electronic case filing ("ECF") system, which will automatically serve it upon all persons entitled to notice in the case by the Court's ECF notification system.

                                      /s/ Nathan A. Schultz
                                        Nathan A. Schultz

FOX ROTHSCHILD LLP
345 California Street, Suite 2200
San Francisco, CA 94104-2670
Telephone:  (310) 429-7128
Facsimile:  (415) 391-4436
Email: nschultz@foxrothschild.com

Counsel for Creditors