KeyCite Yellow Flag - Negative Treatment
Distinguished by Samson Lone Star Limited Partnership v. Hooks, Tex.App.-Hous. (1 Dist.), March 15, 2016

260 S.W.3d 34
Court of Appeals of Texas,
Houston (1st Dist.).

Christopher G. DeCLAIRE, Appellant,
v.
G & B McINTOSH FAMILY LIMITED PARTNERSHIP, Appellee.

No. 01–06–00423–CV.
|
May 8, 2008.

**Synopsis**
**Background:** In divorce action of maker of promissory note, payee intervened, asserted claims for breach of contract, unjust enrichment and fraud, and moved for a temporary injunction. The 312th District Court, Harris County, James D. Squire, P.J., issued temporary injunction, ordered maker to deposit money in court registry, severed the underlying divorce proceeding, and transferred the intervention and counterclaim. After a bench trial, the 269th District Court, Harris County, John T. Wooldridge, J., entered judgment for payee, and maker appealed.

**Holdings:** On rehearing, the Court of Appeals, Evelyn V. Keyes, J., held that:

[1] promissory note, which contained a sole recourse provision, was a valid, written contract;

[2] parol evidence rule precluded payee from enforcing parties' prior oral agreement that did not contain the sole recourse provision;

[3] payee did not reasonably rely on maker's prior oral representations regarding proposed promissory note, as required in order to maintain a fraud claim against maker;

[4] payee and maker did not make a mutual mistake of fact regarding the sole recourse provision; and

[5] payee could not assert an unjust enrichment claim to collect the balance due from maker personally.

Reversed and remanded.

West Headnotes (36)

**[1]**   **Appeal and Error**
         **Same effect as those of jury**
         **Appeal and Error**
         **Review for Factual or Legal Sufficiency; "No Evidence" Review**

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and the Court of Appeals reviews the legal and factual sufficiency of the evidence used to support them just as the Court would review a jury's findings.

1 Cases that cite this headnote

**[2]**   **Appeal and Error**
         **Conclusiveness and effect of verdict or findings in general**

When challenged on appeal, a trial court's findings of fact are not conclusive if there is a complete reporter's record.

1 Cases that cite this headnote

**[3]**   **Appeal and Error**
         **Review for factual or legal sufficiency; "no evidence" review**

When a party without the burden of proof at trial challenges the legal sufficiency of the evidence on appeal, the reviewing court considers all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor.

2 Cases that cite this headnote

**[4]** **Appeal and Error**
🗝Scintilla of evidence

When a party without the burden of proof at trial challenges the legal sufficiency of the evidence on appeal, if there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, the reviewing court will overrule the issue.

Cases that cite this headnote

**[5]** **Bills and Notes**
🗝Nature and essentials in general

A promissory note is a contract evincing an obligation to pay money.

4 Cases that cite this headnote

**[6]** **Bills and Notes**
🗝General rules of construction

Construction of the terms of a promissory note is controlled by the rules generally applicable to interpreting contracts.

Cases that cite this headnote

**[7]** **Contracts**
🗝Elements in general

The elements of a valid contract are: (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.

16 Cases that cite this headnote

**[8]** **Contracts**
🗝Intent of parties
**Contracts**
🗝Necessity of assent

The determination of a meeting of the minds on a contract, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind.

11 Cases that cite this headnote

**[9]** **Bills and Notes**
🗝Necessity and sufficiency in general

The delivery of a promissory note is made for the purpose of giving effect to the instrument according to its terms, unless it be shown that by agreement of the parties, including the payee, the delivery was made for some other purpose.

Cases that cite this headnote

**[10]** **Bills and Notes**
🗝Ratification of instrument defectively executed

Promissory note executed by maker, which provided that shares of corporation's common stock would serve as the sole source of repayment for the outstanding principal and interest due if note was not paid in full prior to maturity date, constituted a valid, written contract, though payee did not sign the note, where payee took possession of the note, acted on it, and did not object to any part of it.

1 Cases that cite this headnote

[11] **Contracts**
🔑 Signature

A contract can still be effective if only signed by one party.

10 Cases that cite this headnote

[12] **Contracts**
🔑 Signature

If one party signs a contract, the other may accept by his acts, conduct, or acquiescence in the terms of the contract even if he does not sign the contract.

16 Cases that cite this headnote

[13] **Evidence**
🔑 Grounds for exclusion of extrinsic evidence

The parol evidence rule is a rule of substantive law.

4 Cases that cite this headnote

[14] **Evidence**
🔑 Completeness of writing and presumption in relation thereto; integration

When parties reduce an agreement to writing, the law of parol evidence presumes, in the absence of fraud, accident, or mistake, that any prior or contemporaneous oral or written agreements merged into the written agreement and, therefore, that any provisions not set out in the writing were either abandoned before execution of the agreement or, alternatively, were never made and are thus excluded from consideration in interpreting the written agreement.

9 Cases that cite this headnote

[15] **Evidence**
🔑 Bills and notes

The terms of a promissory note cannot be contradicted or varied by parol evidence of a manner of payment other than as expressed in the note.

2 Cases that cite this headnote

[16] **Appeal and Error**
🔑 Parol or extrinsic evidence affecting writings

Court of Appeals reviews parol evidence questions de novo, as questions of law.

1 Cases that cite this headnote

[17] **Evidence**
🔑 Grounds for exclusion of extrinsic evidence
**Evidence**
🔑 Evidence improperly admitted

Evidence that violates the parol evidence rule has no legal effect and merely constitutes proof of facts that are immaterial and inoperative.

4 Cases that cite this headnote

[18] **Evidence**
🔑 Contracts in General
**Evidence**
🔑 Contracts in general
**Evidence**
🔑 Grounds for admission of extrinsic evidence
**Evidence**
🔑 Grounds for admission of extrinsic evidence

Because all prior negotiations and agreements are presumed merged into the final agreement,

parol evidence is not admissible to vary, alter, or supplement the terms of an otherwise unambiguous contract except to show: (1) that the contract was induced by fraud, accident, or mistake; (2) that an agreement was to become effective only upon certain contingencies; or (3) in the case of ambiguity, that the parties' true intentions differ from those expressed in the agreement.

5 Cases that cite this headnote

[19]  **Evidence**
 Contracts in General
 **Evidence**
 Prior and Contemporaneous Collateral Agreements

Parol evidence may be admissible to show collateral, contemporaneous agreements that are consistent with the underlying agreement to be construed, but this exception to the parol evidence rule does not permit parol evidence that varies or contradicts either the express terms or the implied terms of a written agreement.

14 Cases that cite this headnote

[20]  **Evidence**
 Bills and notes

Parol evidence rule precluded payee on promissory note from enforcing maker's and payee's prior oral agreement, that maker would repay payee $159,000 plus interest, when the parties' subsequent written promissory note included the same terms as the oral agreement but added language that shares of corporation's common stock would serve as the sole source of repayment if the note was not paid in full prior to maturity date, as the oral agreement was inconsistent with the written promissory note.

1 Cases that cite this headnote

[21]  **Fraud**
 Elements of Actual Fraud

To recover on an action for fraud, the plaintiff must prove that: (1) a material representation was made; (2) the representation was false; (3) when the speaker made the representation, he knew it was false or made it recklessly without knowledge of the truth as a positive assertion; (4) the speaker made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the party thereby suffered injury.

1 Cases that cite this headnote

[22]  **Fraud**
 Reliance on Representations and Inducement to Act

One of the elements of a fraud claim is that the plaintiff actually and justifiably relied on the misrepresentation to suffer injury.

Cases that cite this headnote

[23]  **Fraud**
 Duty to Investigate

A party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, for purposes of a subsequent fraud claim, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party.

2 Cases that cite this headnote

[24]  **Fraud**
 Relations and means of knowledge of parties

Reliance upon an oral representation that is

directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law, for purposes of a fraud claim.

11 Cases that cite this headnote

[25]  Fraud
 Relations and means of knowledge of parties

Payee on promissory note did not justifiably rely on maker's prior oral representations regarding the terms of proposed promissory note, as required if payee was to maintain a fraud claim against maker for including in promissory note provision, which the parties had not discussed, stating that shares of corporation's common stock would serve as the sole source of repayment if note was not paid in full prior to maturity date, where payee did not read the promissory note when it was delivered other than to verify that maker had signed it, payee's financial advisor did not read the terms of the note after it was delivered, payee only discovered the sole recourse provision in the note when payee attempted to enforce the note, and payee was not tricked into accepting the terms of the note.

Cases that cite this headnote

[26]  Contracts
 Signing in ignorance of contents in general

A party to a written agreement is charged as a matter of law with knowledge of its provisions unless he can demonstrate that he was tricked into its execution.

3 Cases that cite this headnote

[27]  Bills and Notes
 Form and requisites in general
Bills and Notes
 Want or Failure of Consideration
Bills and Notes
 Mistake, fraud, or duress

Payee on promissory note waived defenses of lack of consideration, mutual mistake, and nonacceptance of limited recourse provision, in dispute between payee and maker over whether maker was personally liable for balance due on promissory note when note contained sole recourse provision stating that corporation's common stock was the sole source of repayment if note was not paid in full by maturity date, as such defenses were affirmative defenses, payee did not raise such defenses in its pleadings, and affirmative defenses that were not affirmatively pled were waived. Vernon's Ann.Texas Rules Civ.Proc., Rules 94, 301.

1 Cases that cite this headnote

[28]  Bills and Notes
 Mistake, fraud, or duress
Pleading
 Necessity for defense

Mutual mistake is an affirmative defense that must be pleaded or is waived. Vernon's Ann.Texas Rules Civ.Proc., Rule 94.

1 Cases that cite this headnote

[29]  Bills and Notes
 Mistake

Payee and maker of promissory note did not make a mutual mistake of fact regarding sole recourse provision that maker added to promissory note, which provided that corporation's common stock was the sole source of repayment if note was not paid in full by maturity date, and thus payee could not rely on mutual mistake of fact when it sought to avoid the provision in its attempt to collect balance due on the note from maker personally; maker testified he would not have signed the note without the sole recourse provision, payee

claimed it would not have accepted the note if it realized it contained the provision, payee was actually trying to enforce parties' prior oral agreement that did not include sole recourse language, and the parties were not under the same misunderstanding of the same fact.

Cases that cite this headnote

[30]   **Contracts**
       🗝 Mutual mistake

Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided.

Cases that cite this headnote

[31]   **Contracts**
       🗝 Mutual mistake

The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, but rather solely by objective circumstances surrounding execution of the contract.

Cases that cite this headnote

[32]   **Bills and Notes**
       🗝 Mistake

When it is argued that mutual mistake nullifies a note, the evidence must show that both parties were acting under the same misunderstanding of the same material fact.

Cases that cite this headnote

[33]   **Evidence**
       🗝 Contracts in general

The parol evidence rule does not bar extrinsic proof of mutual mistake made by parties to a contract.

Cases that cite this headnote

[34]   **Implied and Constructive Contracts**
       🗝 Effect of Express Contract

Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, such as unjust enrichment, though there are exceptions to this general rule.

6 Cases that cite this headnote

[35]   **Implied and Constructive Contracts**
       🗝 Unjust enrichment

A claim for unjust enrichment may be had where overpayment was made under a valid contract.

3 Cases that cite this headnote

[36]   **Bills and Notes**
       🗝 Nature of Contract and Liability of Maker

Payee on promissory note could not assert an unjust enrichment claim against the maker of the note in order to collect the balance due from the maker personally, when the note contained a sole recourse provision stating that corporation's common stock was the sole source for repayment if note was not paid in full by its maturity date, as the parties had entered into a valid, written contract, and nothing suggested that overpayment was made on the note.

1 Cases that cite this headnote

**Attorneys and Law Firms**

***38** Brian E. Bro, Law Offices of Brian E. Bro, Byron C. Keeling, Keeling & Downes, P.C., Houston, TX, for appellant.

R. Russell Hollenbeck, Thomas C. Wright, Wright Brown & Close, LLP, Rayford J. Black Jr., Houston, TX, for appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

**Opinion**

### OPINION ON REHEARING

EVELYN V. KEYES, Justice.

We grant appellee's motion for rehearing. *See* TEX.R.APP. P. 49.3. We withdraw our opinion and judgment of November 8, 2007 and issue the following in its stead.

Appellant, Chris DeClaire, appeals the trial court's judgment that found in favor of appellee, G & B McIntosh Family Limited Partnership ("Partnership"). In 13 issues, DeClaire argues that the trial court's findings of fact and conclusions of law are erroneous because (1) the evidence is legally and factually insufficient to establish fraud; (2) the parol evidence rule and the merger doctrine bar the admission of evidence concerning an oral agreement; (3) the judgment creates a usurious transaction; and (4) the trial court erred in awarding attorney's fees, interest, and costs.

We reverse and remand.

### Background

In June 2001, DeClaire obtained a loan from Bank One in the face amount of $160,000 (the "Bank One Loan"). The Bank One Loan subsequently became undercollateralized.

Bank One asked DeClaire to pledge additional collateral. DeClaire approached Jerry McIntosh, a general partner of the Partnership and with whom he had a previous business relationship, for assistance. In 2001, McIntosh agreed to pledge $193,000 in marketable securities owned by the Partnership against the Bank One Loan. McIntosh thought that the pledging of assets would be short term, but it actually lasted three to four years. Thereafter, on or about May 7, 2003, DeClaire signed a promissory note in favor of Bank One for $159,000 with a maturity date of February 8, 2004. McIntosh signed a pledge agreement incident to the Partnership assets already pledged against the Bank One Loan. In the summer of 2004, the Partnership thought that the Bank One Loan would not be renewed, and it feared that, unless the Bank One Loan was paid off, the Partnership's collateral would be liquidated to pay the outstanding balance. For the prior three years, DeClaire had paid only the interest on the Bank One Loan, and, therefore, the face amount remained approximately $160,000.

In 2004, McIntosh, on behalf of the Partnership, paid off DeClaire's debt at Bank One pursuant to an agreement with DeClaire and took a promissory note from DeClaire (the "DeClaire Note") that was secured by shares of common stock in a ***39** closely-held company known as Coastal Caverns, Inc.[1] The DeClaire Note, signed by DeClaire on September 16, 2004, stated that DeClaire promised to pay the Partnership $216,260.00 and provided a maturity date of March 6, 2005. The evidence conflicts as to when and where McIntosh picked up the DeClaire Note, but it is undisputed that he did not read it. Subsequently, McIntosh delivered the DeClaire Note to his financial advisor, David Russell, who, likewise, undisputedly did not read it. Russell directed Ann Guin at Bank One to pay off DeClaire's loan on September 16, 2004, prior to McIntosh's accepting the DeClaire Note.[2] A week after accepting the DeClaire Note, McIntosh submitted a letter directing Bank One to transfer the funds from the Partnership's account to pay off DeClaire's Bank One Note. DeClaire subsequently defaulted on the DeClaire Note.

In June 2004, DeClaire filed for divorce. The Partnership intervened and sought a temporary restraining order and a temporary injunction. The Partnership alleged causes of action for breach of contract and fraud and misrepresentation in connection with the DeClaire Note. In its second amended plea in intervention, the Partnership amended its breach of contract cause of action to a breach of an oral agreement. It asserted the same causes of action it had asserted in its original plea in intervention, plus claims for declaratory judgment and unjust enrichment. On March 17, 2005, DeClaire filed his

original answer and counterclaim to the intervention of the Partnership. Additional amended answers were filed that culminated in a fifth amended answer. In his answer, DeClaire stated that the terms of the DeClaire Note provided that he could pay the Note off either by paying $216,260 to the Partnership or by letting 100,000 shares of Coastal Caverns common stock serve as the sole source of repayment to the Partnership.

On March 22, 2005, the presiding judge of the 312th District Court, the Honorable James D. Squire, issued a temporary injunction and ordered that DeClaire deposit $250,000 and 100,000 shares of Coastal Caverns, Inc. common stock into the court registry. Judge Squire severed the underlying divorce proceeding and transferred the intervention and counterclaim to the 269th District Court.[3]

The trial court entered a final judgment on March 3, 2006 in favor of the Partnership. The trial court ordered DeClaire to pay $159,000 "plus accrued but unpaid interest thereon at a rate of ten percent (10%) per annum beginning on September 15, 2004 through the date of trial, as repayment for the Partnership having paid off the Bank One Loan." The trial court further ordered DeClaire to pay the Partnership $54,000 "as payment for DeClaire's use of Partnership assets that were pledged on the Bank One Loan." The trial court further ordered that DeClaire pay to the Partnership $68,000 "as reasonable and necessary attorneys' fees and ... [$3,000] as taxable costs through the time of trial" and that he pay contingent attorney's fees for appeal. The trial court ordered that DeClaire could, at his option, pay part of the final judgment with the 100,000 shares of Coastal Caverns, Inc. common stock that was currently being held in the court registry. The trial court *40 stated that the value of the stock could not exceed $.20 per share. In its final judgment, the trial court denied DeClaire's objections to the court's findings of fact and conclusions of law. DeClaire filed a motion for new trial, which the trial court denied.

Pertinent to this appeal, the trial court made the following findings:

> 10. On or about May 7, 2003, DeClaire signed a promissory note with Bank One for $159,000. At that time, McIntosh signed a pledge agreement incident to Partnership assets that were already pledged against the Bank One Loan. That loan was set to mature on February 8, 2004.

> 16. When Steve Barth ("Barth") learned of the situation with the Bank One Loan, he offered to assist with resolving the situation. Thereafter, Barth served as a facilitator between DeClaire on the one hand, and the Partnership (by and through Russell) on the other. Specifically, Barth helped DeClaire and the partnership establish the terms of an oral agreement whereby (i) the Partnership would pay off the Bank One Loan, (ii) DeClaire would repay the Partnership, with interest, in 2005, (iii) DeClaire would compensate the Partnership for the use of its collateral for three years, and (iv) DeClaire would pledge collateral (shares of Coastal Caverns, Inc. common stock) toward his obligation to the Partnership.

> 17. Rob James ("James") also offered to help DeClaire. In an effort to avoid DeClaire having to report ordinary income from the pay off of the Bank One Loan, Barth [sic] agreed to draft a promissory note to memorialize the oral agreement. That promissory note would also extend the payment of DeClaire's obligation to the partnership into 2005 so DeClaire could treat the transaction as a long-term capital gain (instead of ordinary income) if he were forced to liquidate the Coastal Caverns, Inc. common stock to pay off the partnership.

> 18. McIntosh had a conversation with DeClaire during which DeClaire agreed to pledge 100,000 shares of Coastal Caverns, Inc. common stock as collateral for his obligation to the Partnership. McIntosh, Russell and the partnership always expected DeClaire to repay his obligation to the Partnership in cash. Any collateral pledged was viewed as added security in the event of default.

> 20. On or about September 7, 2004, James drafted a promissory note for DeClaire and McIntosh to consider. James then e-mailed the draft to Barth, who e-mailed it to Russell on September 13, 2004. The draft did not contain any language limiting DeClaire's repayment to the Partnership, which was to be the payee on the promissory note. Russell made no other suggestions with regard to the draft.

> 23. On the morning of September 16, 2004, prior to DeClaire signing the Promissory Note, Russell e-mailed Guin with instructions to liquidate the Partnership's collateral account and pay off the Bank One Loan. The assets in the collateral account were mutual funds that could be liquidated in one day. At that time, McIntosh and Russell considered the oral agreement in place and the promissory note merely a *41 formality to assist DeClaire with tax avoidance issues.

> 24. On that same morning, DeClaire, Barth and

James all convened in Barth's office and revised the draft promissory note. DeClaire represented to Barth and/or James that McIntosh agreed to 100,000 shares of Coastal Caverns, Inc. common stock as collateral for the note. DeClaire further represented to Barth and/or James that McIntosh agreed to look solely to the 100,000 shares of Coastal Caverns, Inc. common stock for repayment of the note. DeClaire then requested that language be added to the draft to accomplish that outcome.

25. The Partnership did not receive any consideration for the revised language in the promissory note limiting repayment of DeClaire's obligation solely to Coastal Caverns, Inc. common stock.

26. James revised the draft promissory note on September 16, 2004 in accordance with DeClaire's representations and requests. James also included the face amount of $216,260.00 in the revised draft. When DeClaire inquired [about] the amount, James told him that it included compensation to the Partnership for use of its collateral. DeClaire did not complain about the amount, or any other term of the revised draft, and later signed it. DeClaire knew that his Coastal Caverns, Inc. common stock was speculative and had little or no market value.

28. The revised promissory not was never presented to McIntosh or Russell prior to DeClaire signing it.

29. Neither McIntosh, Russell nor the Partnership agreed to look solely to the Coast[al] Caverns, Inc. common stock as full repayment of DeClaire's obligation to the Partnership.

30. After the note was printed in its revised form, DeClaire signed it on the afternoon of September 16, 2004 (the "Promissory Note").

31. McIntosh later took possession of the Promissory Note while in Houston. Prior to taking possession of the Promissory Note, McIntosh called Russell to make sure it was proper to take it. Russell told McIntosh to take the Promissory Note as long as it was the same as the draft Russell received from Barth. Upon inquir[y], McIntosh was told that the Promissory Note was the same as the draft, so he took possession.

The trial court made the following pertinent conclusions of law:

**Breach of Contract**

1. Prior to September 16, 2004, DeClaire and the Partnership orally agreed to the following terms: (i) the Partnership would pay off the $159,000.00 Bank One Loan for DeClaire, (ii) DeClaire would repay the partnership the $159,000.00 plus accrued interest; (iii) DeClaire would pledge 100,000 shares of coastal Caverns, Inc. common stock as collateral to secure his obligation to the Partnership, (iv) DeClaire would reasonably compensate the Partnership for having pledged assets for DeClaire's benefit for the preceding three years, (v) DeClaire would pay interest on the obligation at a reasonable rate, and (vi) the obligation would mature in the spring of 2005.

4. Neither McIntosh nor the Partnership accepted the Promissory Note or its terms to the extent that it ***42** includes language limiting repayment solely to 100,000 shares of Coastal Caverns, Inc. common stock.

5. DeClaire did not give consideration to the partnership for language inserted into the Promissory Note limiting repayment to 100,000 shares of Coastal Caverns, Inc. common stock.

6. The Partnership is not required to accept 100,000 shares of Coastal Caverns, Inc. common stock as the sole source of repayment of DeClaire's obligation under the oral contract.

8. There was mutual mistake and/or no meeting of the minds with regard to the inclusion of the limited recourse language in the Promissory Note. The facts demonstrate that the sole source language was not agreed to by the parties, but rather was inserted by DeClaire in an attempt to personally avoid repayment of the loan for cash.

**Declaratory Judgment**

9. DeClaire agreed to reasonably compensate McIntosh (and ultimately the Partnership) for the use of Partnership assets that were pledged on the Bank One Loan.

10. McIntosh (and the Partnership) is entitled to reasonable compensation in the amount of $54,000.00 for the use of its collateral from 2001 to 2004.

**Fraud**

2. DeClaire misrepresented to Barth and James (who were acting as intermediaries) that McIntosh had agreed to revisions to the Promissory Note that would limit the repayment of that obligation solely to 100,000 shares of Coastal Caverns, Inc. common stock.

3. Neither McIntosh (and the Partnership) nor Russell ever agreed to limit repayment of the Promissory Note to 100,000 shares of Coastal Caverns, Inc. common stock.

5. The Partnership relied to its detriment on the representations of DeClaire under the terms of the oral contract. DeClaire's attempt to modify that contract has harmed the Partnership.

**Unjust Enrichment**

1. DeClaire will be unjustly enriched in the absence of him reasonably compensating the Partnership for the use of its collateral from 2001 to 2004.

2. DeClaire will be unjustly enriched in the absence of him repaying the Partnership for it having paid off the Bank One Loan. The 100,000 shares of Coastal Caverns, Inc. common stock is wholly insufficient to fully repay the Partnership.

**Standard of Review**

[1] [2] [3] [4] In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *In re K.R.P.,* 80 S.W.3d 669, 673 (Tex.App.–Houston [1st Dist.] 2002, pet. denied). When challenged, a trial court's findings of fact are not conclusive if, as in the present case, there is a complete reporter's record. *In re K.R.P.,* 80 S.W.3d at 673; *Amador v. Berrospe,* 961 S.W.2d 205, 207 (Tex.App.–Houston [1st Dist.] 1996, writ denied). When a party without the burden of proof at trial challenges the legal sufficiency of the evidence, we consider all of the evidence **\*43** in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Assoc. Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998). If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998). In our review of the factual sufficiency of the evidence, we must consider and weigh all of the evidence, and we will set aside a verdict only if the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). We review a trial court's conclusions of law de novo. *In re Moers,* 104 S.W.3d 609, 611 (Tex.App.–Houston [1st Dist.] 2003, no pet.). We independently evaluate a trial court's conclusions to determine their correctness, and we will uphold conclusions on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.*

**Analysis**

*Did the parties have a valid, written contract?*
In his fourth issue, DeClaire argues that the parol evidence rule bars the Partnership from asserting the existence of an alleged oral agreement that is inconsistent with the terms of the written DeClaire Note. In his twelfth issue, he argues that the trial court's conclusion of law regarding the Partnership's request for declaratory relief is incorrect. To address these issues, we first determine whether the parties had a valid, written contract.

The September 16, 2004 promissory note states:

FOR VALUE RECEIVED, CHRISTOPHER G. DECLAIRE, 2300 McCue # 138, Houston, Texas 77056 (the "Maker"), promises to pay to the order of G & B McIntosh Family Limited partnership (the "payee"), 20 Laurelwood Drive, Fletcher, North Carolina 28732, the principal sum of TWO HUNDRED SIXTEEN THOUSAND TWO HUNDRED SIXTY AND 00/100 DOLLARS ($216,260.00), in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts, together with interest on the unpaid balance thereof from the date hereof at the rate of ten percent (10%) per annum, compounded monthly, payable in like coin or currency, until the full amount of this Note, both principal and interest, is paid.

All principal of this Note and all unpaid accrued interest thereon shall be due and payable in full in one payment on or before March 6, 2005.

...

This Note is solely secured by those 100,000 shares of the common stock of Coastal Caverns, Inc. placed into

escrow with the Payee as security for this Note. If the Note is not paid in full prior to the maturity date, the escrowed shares shall serve as the sole source of repayment for the outstanding principal and interest due under this note.

[5] [6] [7] [8] [9] The promissory note in this case is a negotiable instrument to which the Texas Uniform Commercial Code applies.[4] *44 See TEX. BUS. & COM.CODE ANN. § 3.104(a) (Vernon 2002). Unless displaced by particular provisions of the UCC, however, general principles of law apply. See TEX. BUS. & COM.CODE ANN. § 1.103 (Vernon Supp.2006). A promissory note is a contract evincing an obligation to pay money. Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex.App.–Houston [1st Dist.] 2003, no pet.). As such, the construction of its terms is controlled by the rules generally applicable to interpreting contracts. Id. The elements of a valid contract are: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex.App.–Houston [1st Dist.] 2002, pet. denied). The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind. Baroid Equipment, Inc. v. Odeco Drilling, Inc., 184 S.W.3d 1, 17 (Tex.App.–Houston [1st Dist.] 2005, pet. denied). The delivery of the note is "made for the purpose of giving effect to the instrument according to its terms, unless it be shown that by agreement of the parties, including the payee, the delivery was made for some other purpose." Anderson v. Ladd, 131 Tex. 479, 115 S.W.2d 608, 610 (1938); Morton v. Samuels, 268 S.W.2d 490, (Tex.Civ.App.1954).

[10] [11] [12] Here, the DeClaire Note was signed by DeClaire and dated September 16, 2004. The DeClaire Note contains all the terms of a valid contract in that it provides that DeClaire promises to pay the Partnership $216,260.00 on March 6, 2005. Although McIntosh did not sign the Note, a contract can still be effective if signed by only one party. See, e.g., Velasquez v. Schuehle, 562 S.W.2d 1, 3 (Tex.Civ.App.–San Antonio 1977, no writ). Specifically, if one party signs, the other may accept by his acts, conduct, or acquiescence in the terms of the contract. Id.; see In re Bunzl USA Inc., 155 S.W.3d 202, 209 (Tex.App.–El Paso 2004, orig. proceeding); ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc., 115 S.W.3d 287, 292 (Tex.App.–Corpus Christi 2003, pet. denied); Augusta Dev. Co. v. Fish Oil Well Servicing Co., 761 S.W.2d 538, 545 (Tex.App.–Corpus Christi 1988, no pet.); see also In re Citgo Petroleum Corp., No. 09–07–563–CV, 2007 WL 4938701, at *2 (Tex.App.–Beaumont Feb. 21, 2008, mand. filed) (although party's signature on contract is strong evidence that party unconditionally assented to its terms, when signature is not present other evidence may be relied on to prove party's unconditional assent); cf. Baylor University v. Sonnichsen, 221 S.W.3d 632, 635 (Tex.2007) (coach and private university did not mutually assent to one-year employment contract when university prepared and signed draft employment contract but did not deliver it to coach).

McIntosh picked up the Note on the day it was signed by DeClaire, September 15, 2004, and subsequently gave it to his financial advisor. Neither McIntosh nor anyone else representing the interests of the Partnership objected to the terms of the DeClaire Note. After taking possession of *45 the note, McIntosh submitted a letter directing Bank One to transfer the funds from the Partnership's account to pay off DeClaire's Bank One Note. See Cox v. Southern Garrett, 245 S.W.3d 574, 581 (Tex.App.–Houston [1st Dist.] 2007, no pet.) (holding that act of depositing check was acceptance of offer). By taking possession of the Note, acting on it, and not objecting to any part of it, McIntosh accepted its terms on behalf of the Partnership. See Anderson, 115 S.W.2d at 610. Thus, we conclude that the parties entered into a valid written contract.

*Parol Evidence Rule*
[13] [14] [15] We next determine whether the trial court could consider parol evidence. The parol evidence rule is a rule of substantive law. Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30, 31 (1958); Gonzalez v. United Bd. of Carpenters & Joiners, 93 S.W.3d 208, 211 (Tex.App.–Houston [14th Dist.] 2002, no pet); Piper, Stiles & Ladd v. Fid. & Deposit Co., 435 S.W.2d 934, 940 (Tex.Civ.App.–Houston [1st Dist.] 1968, writ ref'd n.r.e.). When parties reduce an agreement to writing, the law of parol evidence presumes, in the absence of fraud, accident, or mistake, that any prior or contemporaneous oral or written agreements merged into the written agreement and, therefore, that any provisions not set out in the writing were either abandoned before execution of the agreement or, alternatively, were never made and are thus excluded from consideration in interpreting the written agreement. See Hubacek, 317 S.W.2d at 31; Smith v. Smith, 794 S.W.2d 823, 827 (Tex.App.–Dallas 1990, no writ); Muhm v. Davis, 580 S.W.2d 98, 101 (Tex.Civ.App.–Houston [1st Dist.] 1979, writ ref'd n.r.e.). The terms of a promissory note cannot be contradicted or varied by parol evidence of a manner of payment other than as expressed in the note. Dameris v. Homestead

*Bank,* 495 S.W.2d 52, 54 (Tex.Civ.App.–Houston [1st Dist.] 1973, no writ).

[16] [17] [18] We review parol evidence questions de novo, as questions of law. *City of Pasadena v. Gennedy,* 125 S.W.3d 687, 691 (Tex.App.–Houston [1st Dist.] 2003, pet. denied). Evidence that violates the parol evidence rule has no legal effect and "merely constitutes proof of facts that are immaterial and inoperative." *Piper, Stiles & Ladd,* 435 S.W.2d at 940. Because all prior negotiations and agreements are presumed merged into the final agreement, parol evidence is not admissible to vary, alter, or supplement the terms of an otherwise unambiguous contract except to show (1) that the contract was induced by fraud, accident, or mistake; (2) that an agreement was to become effective only upon certain contingencies; or (3) in the case of ambiguity, that the parties' true intentions differ from those expressed in the agreement. See *Messer v. Johnson,* 422 S.W.2d 908, 912 (Tex.1968); *Gonzalez,* 93 S.W.3d at 211; *Litton v. Hanley,* 823 S.W.2d 428, 430 (Tex.App.–Houston [1st Dist.] 1992, no writ).

[19] Parol evidence may also be admissible, under an additional exception, to show collateral, contemporaneous agreements that are consistent with the underlying agreement to be construed. See *Hubacek,* 317 S.W.2d at 31; see also *Transit Enter., Inc. v. Addicks Tire & Auto Supply, Inc.,* 725 S.W.2d 459, 461 (Tex.App.–Houston [1st Dist.] 1987, no writ) (applying exception for collateral, consistent, contemporaneous agreements); *Sherrod v. Bailey,* 580 S.W.2d 24, 29 (Tex.Civ.App.–Houston [1st Dist.] 1979, writ ref'd n.r.e.) (same). But this latter exception does not permit parol evidence that varies or contradicts either the express terms or the implied terms of the written agreement. *Hubacek,* 317 S.W.2d at 31; *Loe v. Murphy,* **\*46** 611 S.W.2d 449, 451–52 (Tex.Civ.App.–Dallas 1980, writ ref'd n.r.e.); *NHA, Inc. v. Jones,* 500 S.W.2d 940, 944–45 (Tex.Civ.App.–Fort Worth 1973, writ ref'd n.r.e.) (both citing *Hubacek* ).

[20] Here, the trial court found that DeClaire and McIntosh entered into an oral agreement whereby DeClaire would repay the Partnership $159,000.00 plus interest. The parties' written contract—the DeClaire Note—included the same terms as the oral agreement, with the addition of the sole recourse language. Because the oral agreement is inconsistent with the written contract, we conclude that the trial court was precluded from enforcing the prior oral agreement. See *Baroid Equip.,* 184 S.W.3d at 16; *Simmons v. Compania Financiera Libano, S.A.,* 830 S.W.2d 789, 791 (Tex.App.–Houston [1st Dist.] 1992, writ denied) (holding that the "clear terms of a negotiable instrument, such as the ones in this case, cannot be varied by a parol agreement which purports to change the obligor's responsibilities"); *Texas Export Development Corp. v. Schleder,* 519 S.W.2d 134, 137 (Tex.Civ.App.–Dallas 1974, no writ) (holding that parol evidence tendered by maker of note is inadmissible because it "negates the very obligation imposed upon him in the written instrument"). Because the trial court could not rely on parol evidence, we also conclude that legally insufficient evidence supports the trial court's ninth and tenth conclusions of law under the declaratory judgment sub-heading.

We sustain DeClaire's fourth and twelfth issues. Because we sustain DeClaire's fourth issue and twelfth issues, it is not necessary to address DeClaire's fifth and sixth issues, concerning the validity of an oral agreement. See TEX.R.APP. P. 47.1.

*Fraud*

In his second issue, DeClaire argues that legally and factually insufficient evidence supports the trial court's findings of fact and conclusions of law regarding McIntosh's justifiable reliance on any alleged misrepresentation in connection with the DeClaire Note. DeClaire asserts that the Partnership's fraud theory fails because (a) "DeClaire's alleged 'misrepresentation' never reached [McIntosh] and thus [McIntosh] cannot purport to have reasonably or justifiably relied on it, and (b) because the evidence conclusively shows that [McIntosh] did not in fact reasonably or justifiably rely on any alleged 'misrepresentation.' "

[21] To recover on an action for fraud, the plaintiff must prove that (1) a material representation was made; (2) the representation was false; (3) when the speaker made the representation, he knew it was false or made it recklessly without knowledge of the truth as a positive assertion; (4) the speaker made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the party thereby suffered injury. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 524 (Tex.1998).

[22] [23] [24] One of the elements of a fraud claim is that the plaintiff actually and justifiably relied on the misrepresentation to suffer injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001); RESTATEMENT (SECOND) OF TORTS § 537 (1977). In this regard, a party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the

honesty and integrity of the other party. *Thigpen v. Locke,* 363 S.W.2d 247, 251 (Tex.1962); *Coastal Bank SSB v. Chase Bank of Tex., N.A.,* 135 S.W.3d 840, 843 (Tex.App.–Houston [1st Dist.] 2004, no pet.). Therefore, ***47** reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law. *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.,* 112 S.W.3d 854, 858 (Tex.App.–Houston [14th Dist.] 2003, pet. denied). In *DRC Parts,* the Fourteenth Court of Appeals stated,

> This principle is also dictated by policy and practical considerations. If written contracts are to serve a purpose under the law, relative to oral agreements, it is to provide greater certainty regarding what the terms of the transaction are and that those terms will be binding, thereby lessening the potential for error, misfortune, and dispute.

*Id.* The Fourteenth Court of Appeals further explained that

> a party's exercise of a right under the written contract, which is contrary to the oral agreement, would subject that party to a fraudulent inducement claim based on the oral agreement. In that event, however, the party who entered into the written contract while relying on a contrary oral agreement would have thereby itself entered into the written contract with an intent not to perform it. Thus, in order to show its reliance on the oral agreement to sustain its own fraudulent inducement claim, that party would necessarily prove that it was guilty of fraudulent inducement as well.
>
> The essential issue, then, is not whether that party's evidence of the contrary oral agreement is admissible or sufficient to prove that agreement, but instead whether the law will deem such reliance to be justified and thereby favor that party to the detriment of the other contracting party, which has at least declared its intent in the contract and sought to abide by its terms. Because such an approach would defeat the ability of written contracts to provide certainty and avoid dispute, the prevailing rule, recited above, is instead that a party who enters into a written contract while relying on a contrary oral agreement does so at its peril and is not rewarded with a claim for fraudulent inducement when the other party seeks to invoke its rights under the contract.

*Id.* at 858–59.

[25] [26] The undisputed evidence shows that McIntosh received the written promissory note, i.e., the DeClaire Note, but did not read it other than to verify that DeClaire had signed it. He subsequently gave the DeClaire Note to Russell, his financial advisor, who also admitted that he did not read the DeClaire Note. It was not until the Partnership attempted to enforce the DeClaire Note that McIntosh discovered that it included the sole recourse language. Because the parties entered into a valid, written promissory note, McIntosh cannot now complain that he justifiably relied on a prior oral representation as a matter of law. See *id.; see also In re Media Arts Group,* 116 S.W.3d 900, 908 (Tex.App.–Houston [14th Dist.] 2003, orig. proceeding) (stating that, absent fraud, a party to a contract may not successfully claim he believed the provisions of a contract were different from those plainly set out in the contract or he did not understand the language used). Moreover, "a party to a written agreement is charged as a matter of law with knowledge of its provisions ... unless he can demonstrate that he was tricked into its execution." *Town North Nat. Bank v. Broaddus,* 569 S.W.2d 489, 492 (Tex.1978) (quoting *Texas Export Dev.,* 519 S.W.2d at 139). The Partnership did not claim that it was tricked into accepting the terms of the DeClaire Note. Rather, the evidence shows that McIntosh ***48** and Russell failed to read the contents of the DeClaire Note.

Thus, because the Partnership cannot rely on a prior oral agreement after accepting the terms of the written promissory note, we conclude that legally insufficient evidence supports the trial court's findings of fact and conclusions of law stating that the written contract was procured by fraud.

We sustain DeClaire's second issue. Because we sustain DeClaire's second issue, it is not necessary to address DeClaire's first and third issues concerning fraud.

***Defenses***
We now turn to whether the Partnership raised any defenses that would preclude the trial court from enforcing the DeClaire Note. In its fourth, fifth, and eighth conclusions of law under the breach of contract sub-heading, the trial court found that the limited recourse clause lacked consideration, that the parties had made a mutual mistake, and that the limited recourse clause was not accepted. Appellant challenges these conclusions in his seventh, eighth, and ninth, issues on appeal.

[27] [28] In its pleadings, the Partnership raised none of the defenses that the trial court found in its conclusions of

law. *See* TEX.R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings...."). Affirmative defenses not affirmatively pled are waived. *See* TEX.R. CIV. P. 94 (providing that affirmative defense of lack of consideration and any other matter constituting an avoidance or affirmative defense must be affirmatively pled).[5] Mutual mistake is an affirmative defense that must be pleaded or is waived. *Decker v. Urrutia,* 965 S.W.2d 26, 27–28 (Tex.App.–Houston [1st Dist.] 1998), *rev'd on other grounds,* 992 S.W.2d 440 (Tex.1999); *see Durham v. Uvalde Rock Asphalt Co.,* 599 S.W.2d 866, 869 (Tex.App.–San Antonio 1980, no writ); *see also CenterPoint Energy Houston Elec. L.L.P. v. Old TJC Co.,* 177 S.W.3d 425, 430 n. 3 (Tex.App.–Houston [1st Dist.] 2005, pet. denied) ("By case law, mutual mistake has been identified as an affirmative defense that must also be pled.") (citing *Durham,* 599 S.W.2d at 869).

[29] [30] [31] [32] [33] Furthermore, the evidence shows that the parties did not make a mutual mistake. "Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided." *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990). "The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, ... but rather solely by objective circumstances surrounding execution" of the contract. *Id.* When it is argued that mutual mistake nullifies a note, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *McGoodwin v. McGoodwin,* 181 S.W.3d 870, 875 (Tex.App.–Dallas 2006, pet. denied). "The parol evidence rule does not bar extrinsic proof of mutual mistake." *Id.*

Here, the evidence shows that the Partnership sought to enforce a prior oral agreement that did not include sole recourse language, while DeClaire sought to enforce the written agreement that included the sole recourse language. Instead of a mutual mistake, the evidence demonstrates that the parties were relying on separate agreements with different meanings. DeClaire testified that he would not have signed the DeClaire Note if it did not have the sole recourse language, while McIntosh testified that he would not have **\*49** accepted the Note if he had known that it had the sole recourse language. Although it is possible that one of the parties was mistaken about the contents of the Note, no evidence shows that both parties were under the same misunderstanding of the same fact. Thus, the trial court's eighth conclusion of law is incorrect as a matter of law.

We sustain DeClaire's seventh, eighth, and ninth issues on appeal.

*Unjust Enrichment*

In his tenth issue on appeal, DeClaire argues that the trial court erred in concluding that DeClaire was liable to the Partnership under the doctrine of unjust enrichment.

[34] [35] Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, such as unjust enrichment. *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex.2000). There are, however, exceptions to this general rule. A claim for unjust enrichment may be had where overpayment was made under a valid contract. *See Southwestern Elec. Power Co. v. Burlington N. R.R. Co.,* 966 S.W.2d 467, 469 (Tex.1998).

[36] Here, the parties entered into a valid, written contract and nothing suggests that overpayment was made on the contract. Thus, the Partnership cannot rely on unjust enrichment. Therefore, we hold that the trial court's unjust enrichment conclusions of law to the contrary are incorrect as a matter of law.

We sustain DeClaire's tenth issue on appeal.

Because we hold that the parties are bound to the September 16, 2007 promissory note, it is not necessary for us to address DeClaire's eleventh issue, which argues that the trial court erred in concluding that DeClaire could not maintain a usury claim or defense. *See* TEX.R.APP. P. 47.7.

In his thirteenth issue, DeClaire argues that the trial court erred in awarding attorney's fees, postjudgment interest and costs. Because of our disposition on DeClaire's issues, we reverse and remand the portion of the trial court's judgment that awarded attorney's fees, postjudgment interest, and costs.

We sustain DeClaire's thirteenth issue on appeal.

**Conclusion**

We reverse the judgment of the trial court and render judgment that the Partnership is bound by the terms of the September 16, 2007 promissory note. We remand to the trial court to enter a judgment in accordance with this opinion. We also reverse the portion of the trial court's judgment that awarded attorney's fees, postjudgment

interest, and costs in this cause and remand for further proceedings on this issue.

**All Citations**

260 S.W.3d 34

Footnotes

1   Coastal Caverns is a company in the business of developing caverns for use in waste disposal.

2   According to Guin, Russell did not have authority to distribute funds out of the Partnership's accounts, and therefore, Russell's communication to Guin was not effective.

3   The Honorable John Wooldridge presiding.

4   Section 3.104(a) provides that a negotiable instrument is
    an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the profit or order, if it:
    (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
    (2) is payable on demand or at a definite time; and
    (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money....
    TEX. BUS. & COM.CODE ANN. § 3.104(a) (Vernon 2002).

5   At trial, DeClaire's counsel argued that McIntosh never pled lack of consideration.

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.